El Pueblo de Puerto Rico, demandante y apelado, *v.* Francisco Pamies, acusado y apelante.

No. 3813.—*Sometido:* Nov. 14, 1929. *Resuelto:* Nov. 26, 1929.

*Pedro Baigés Gómez,* abogado del apelante; *R. A. Gómez,* abogado de *El Pueblo,* apelado.

El Juez Presidente Señor del Toro, emitió la opinión del tribunal.

Mediante información del gran jurado, se formuló acusación el 14 de octubre de 1925 contra Francisco Pamies imputándole la comisión de un delito de homicidio perpetrado en la persona de José Esmoris el 17 de junio de 1925.

Se leyó la acusación al acusado; alegó éste su inocencia, y el 28 de diciembre de 1925 el fiscal pidió a la corte que trasladara la causa a otro distrito judicial por los siguientes motivos:

"Que por encima de la prueba, clara y terminante, que contiene todos los requisitos del delito de asesinato en primer grado, según aparece de las notas taquigráficas tomadas durante la investigación del Gran Jurado, que constan en el récord de este caso, las cuales hacemos parte de esta moción, el gran jurado trajo una acusación de homicidio voluntario.

"Que, según información y creencia del fiscal que suscribe, las cuales cree ciertas, alega: Que la familia de este acusado que reside en San Germán, son personas de gran influencia en este distrito, no sólo por su posición social y financiera, sino también políticamente, quienes se han tomado gran interés en este caso.

"Que el jurado de este distrito está influenciado por este acusado, sus amigos y familiares en tal forma que en todas partes se comenta y se dice que saldrá absuelto, debido a su influencia.

"Que además del conocimiento y relación del acusado con los jurados del distrito de Aguadilla, que es el más contiguo, también tiene familiares muy cercanos y de gran influencia en dicho distrito.

"Que en estos distritos se ha hecho la propaganda que éste es un caso entre españoles contra portorriqueños, debido a que el difunto, José Esmoris, era español y el acusado, Francisco Pamies, portorriqueño, por cuya razón han logrado predisponer el ánimo de las personas de estas comunidades en contra de los intereses del Pueblo de Puerto Rico, en que se haga justicia.

"Que este caso es uno de los que más ha conmovido la opinión pública, no sólo en este distrito, sino en los distritos contiguos de Aguadilla y Ponce, debido a que, tanto el acusado, como José Esmoris, que fué la persona a quien le dió muerte, eran personas muy conocidas en estos distritos, debido a su posición social y comercial teniendo el negocio de comisiones, por cuyo motivo viajaban a menudo por los diferentes pueblos de los distritos mencionados."

A la moción del fiscal que está jurada y que fué acompañada de *affidavits* y de notas taquigráficas que no se incluyen en la transcripción de los autos elevada a esta Corte Suprema, contestó oponiéndose el acusado. Negó los hechos alegados por el fiscal y en parte dijo:

"Por iguales fundamentos el acusado se opone a que esta causa sea trasladada a cualquier otro distrito que no sea Aguadilla, caso que se probase satisfactoriamente que existen justos motivos para el traslado de la misma."

El 8 de enero de 1926 se celebró la vista de la moción con la comparecencia de ambas partes y la corte "después de oír la evidencia introducida", ordenó que la causa se trasladara a la Corte de Distrito de Aguadilla "por ser la corte más cercana".

Celebrado en dicha corte el juicio, el jurado el 26 de mayo de 1927 declaró al acusado culpable de homicidio voluntario y solicitó clemencia en la imposición de la pena.

Pidió el acusado un nuevo juicio basándose en que la corte había cometido varios errores al resolver ciertas cuestiones que surgieron con motivo de la práctica de las pruebas y en que el veredicto era contrario a la prueba, y la corte negó su petición y dictó sentencia condenándolo a sufrir cinco años de presidio con trabajos forzados, y como apelara en el acto, le señaló una fianza de dos mil dólares para permanecer en libertad.

■■ La apelación se estableció conjuntamente contra la sentencia, la resolución negatoria del nuevo juicio y la orden decretando el traslado. La transcripción de los autos que no comprende como ya se ha dicho los *affidavits* y notas que se acompañaron a la moción de traslado, ni los autos y la prueba en que se basó la moción de nuevo juicio y que sólo tiene diez y nueve páginas escritas en maquinilla a dos espacios, tardó más de diez y siete meses en elevarse a la secretaría de esta Corte Suprema. Señalamos este hecho porque revela una dilación injustificada en la administración de la justicia que no debe permitirse por los llamados a hacerla cumplir debidamente por igual para todos, siendo mucho más de notarse esa dilación por tratarse de un recurso enteramente frívolo.

La sentencia guarda relación con la acusación y el veredicto, y la pena impuesta está dentro del límite autorizado por la ley.

No es posible considerar siquiera la moción de nuevo juicio porque no se transcriben en la exposición los autos y la prueba que la sirvieron de base.

Sólo se discute en el alegato la moción de traslado, sosteniéndose que es insuficiente en ley porque no contiene alegaciones específicas para el traslado.

Aparte de que en la transcripción no se incluyen los *affidavits* y notas en que dicha moción se basó, *affidavits* y notas que quizá se refieran a hechos específicos en relación con la misma, creemos que los motivos alegados son bastantes y que no se ha demostrado abuso alguno de discreción por parte de

la corte de distrito al decretar el traslado, único caso en que podría revocarse su resolución.

*Deben confirmarse las órdenes y la sentencia recurridas.*